J-A10007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SEAN DARBY AND KHANISA DARBY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| POST ROAD MANAGEMENT, LLC AND | : | No. 1737 EDA 2025 |
| POST ROAD CONSTRUCTION, LLC | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID SABELLA INDIVIDUALLY AND | : | |
| D/B/A  SABELLA'S CONSTRUCTION | : | |
| AND LANDSCAPING | : | |

Appeal from the Order Entered January 14, 2025
In the Court of Common Pleas of Northampton County
Civil Division at No:  C-48-CV-2023-00546

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 6, 2026**

Appellants, Sean and Khanisa Darby, appeal *pro se* from the January 4, 2025 order granting summary judgment in favor of Appellees, Post Road Management, LLC ("PRM") and Post Road Construction, LLC ("PRC").  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellants executed a residential lease agreement and a commercial lease agreement with 120 Northampton Street, LLC ("Northampton").[1] The leases were for adjoining properties (collectively the "Property") located at 118-120 Northampton Street in Easton, Northampton County. Appellants allege that they were walking along the commercial storefront portion of the Property when a gust of wind dislodged a second-story storm window ("the Window"), causing it to fall on them and injure them. Both were taken by ambulance to St. Luke's Hospital in Bethlehem, Pennsylvania. Both were diagnosed with concussions and continued to experience complications following their release from the hospital.

Appellants filed a tort action against Northampton on July 11, 2021, alleging causes of action for negligence, negligent infliction of emotional distress, and loss of consortium. Appellants dismissed their first lawyer after learning that he had previously represented Northampton's owner. After hiring and dismissing several other lawyers, Appellants filed the instant complaint against Appellees on March 3, 2023, for the same causes of action pending against Northampton. Appellants allege that Appellee PRM contracted with Northampton for the maintenance of the Property, and that Appellee PRC developed the Property and was involved in the installation of the Window.

---

[1] Northampton was a named defendant in a "Related Action." Appellants' appeal in the Related Action currently pending at 1734 EDA 2025.

Northampton filed its answer and new matter in the Related Action on February 13, 2023. PRM filed its answer in the instant matter on March 20, 2023. On May 5, 2023, PRC filed a praecipe to join Appellee David Sabella, individually and doing business as Sabella's Construction and Landscaping ("Sabella") as an additional defendant, alleging that Sabella had installed the Window. Northampton joined Sabella in the Related Action.[2] PRC filed an answer and new matter on June 5, 2023.

Appellants, proceeding *pro se* after dismissing another attorney, served interrogatories and requests for the production of documents on Appellees and Northampton. They received responses on December 19, 2023.

On January 4, 2024, the trial court consolidated this action and the Related Action for trial on the motions of Northampton and PRC. On September 3, 2024, with Appellants having taken no further action, Northampton and PRM filed a joint motion for summary judgment. PRC filed its own summary judgment motion that same day. Appellants responded to the summary judgment motions on October 3, 2024. On January 14, 2025, the trial court granted the summary judgment motions. This appeal followed.[3]

_____

[2] Appellees had difficulty effecting service on Sabella, though they eventually succeeded, but Sabella never participated in either action before the trial court and has not filed a brief in this appeal.

[3] The record reveals that Appellants initially filed petitions for permission to appeal to this Court. We ordered that the petitions be treated as notices of appeal and, by order of August, 22, 2025, we denied Appellees' motion to quash this appeal as untimely.

- 3 -

Rule 1035.2 of the Pennsylvania Rules of Civil Procedure governs summary judgment motions:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
>> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>>
>> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

We review the trial court's order according to the following:

> In reviewing a grant of summary judgment, this Court's standard of review is *de novo* and our scope of review is plenary. A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt. […] An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

***Bourgeois v. Snow Time, Inc.***, 242 A.3d 647, 649-50 (Pa. 2020) (citations omitted).

Appellants raise eight assertions of error. Appellants' *Pro Se* Brief at 7-10. We will address them in turn. Appellants' first assertion of error is that the trial court erred in permitting Northampton and PRC to join Sabella as an additional defendant under Pa.R.C.P. 2253.[4] Appellants' *Pro Se* Brief at 7. They argue that Appellees factual basis for joining Sabella was "fraudulent,"

---

[4] Rule 2253 provides:

(a) Except as provided by Rule 1041.1 (e), neither a praecipe for a writ to join an additional defendant nor a complaint if the joinder is commenced by complaint, shall be filed later than

(1) sixty days after the service upon the original defendant of the initial pleading of the plaintiff or any amendment thereof, or

(2) the time for filing the joining party's answer as established by Rule 1026, Rule 1028 or order of court, whichever is later, unless such filing is allowed by order of the court or by the written consent of all parties approved by and filed with the court. The praecipe for a writ to join an additional defendant or the complaint joining the additional defendant shall be filed within twenty days after notice of the court order or the court approval of the written consent or within such other time as the court shall fix.

(b) Any party may object to a motion to join an additional defendant after the period prescribed by subdivision (a) on the ground that the party will be prejudiced by the late joinder. The plaintiff may also object to the late joinder on the ground that the joining party has not shown a reasonable justification for its delay in commencing joinder proceedings.

(c) A person not previously a party who is joined as an additional defendant may object to the joinder by filing preliminary objections asserting prejudice or any other ground set forth in Rule 1028.

Pa. R.C.P. No. 2253

and that the joinder was untimely because the statute of limitations against Sabella had expired. ***Id.***

For several reasons, Appellants' argument does not merit relief. First, Sabella was joined by consent of the parties when Appellants were represented by counsel. Appellants fail to explain how their subsequent dismissal of counsel invalidated their counseled consent to the joinder of Sabella. After dismissing counsel, however, Appellants filed a *pro se* motion to have Sabella dismissed from the case on grounds that more than two years after service of the initial complaint, and eight months after the expiration of the applicable statute of limitations. N.T. Motion, 9/27/24, at 5-6. Appellants' motion to dismiss Sabella came more than one year after their consent to his joinder. ***Id.*** at 6. The trial court denied Appellants' motion, concluding that it was procedurally improper. ***Id.*** at 8-9. On this appeal, Appellants claim that the joinder of Sabella was prejudicial to them because the trial court rejected their *res ipsa loquitor* theory, in part, based upon Appellants' failure to rule out Sabella as a cause of the accident. Appellants' *Pro Se* Brief, at 55.

The only caselaw Appellants cite in support of their argument is ***Hileman v. Morelli***, 605 A.2d 377 (Pa. Super. 1992), wherein this Court held that "a defendant may not bring another party into the case on the theory that he is solely liable to plaintiff if the plaintiff himself is already time barred from suing that new defendant." ***Id.*** at 382. Appellants rely on this sentence from ***Hileman*** (Appellants' *Pro Se* Brief at 52), but they ignore the sentence

that immediately follows: "In contrast, where the original defendant wishes to join an additional defendant who is not already a defendant in the action on the ground that the additional defendant is liable to the original defendant for contribution or indemnity, the statute of limitations on the plaintiff's cause of action is irrelevant. *Id.* Indeed, Appellees argue in this case that Sabella is liable to them. Thus, per *Hileman*, Appellants' statute of limitations argument misses the mark. We address the *res ipsa loquitor* argument below. For the foregoing reasons, Appellants' first argument fails.

Appellants' second assertion of error is that the trial court erred in consolidating the instant "contract action" with the Appellants' tort action pending against Northampton. Appellants' *Pro Se* Brief at 7-8. Appellants rely on the cover sheet of the instant complaint, which erroneously identified this action as a contract action. As explained above, however, the instant complaint alleges causes of action for negligence, negligent infliction of emotional distress, and loss of consortium. The instant case and the case against Northampton arise out of the same incident and allege the same facts in support of the same causes of action.

In *Malanchuk v. Tsimura*, 137 A.3d 1283 (Pa. 2016), our Supreme Court stated the well-settled standard for the consolidation of cases:

> [W]here separate actions in favor of or against two or more persons have arisen out of a single transaction, and the evidence by which they are supported is largely the same, although the rights and liabilities of parties may differ, it is within the discretion of the trial judge to order all to be tried together, though in every

other respect the actions remain distinct and require separate verdicts and judgments.

*Id.* at 1286 (emphasis omitted). Under this standard, the trial court acted well within its discretion in consolidating the instant action with the Northampton action.

Appellants' third assertion of error is that the trial court abused its discretion in declining to provide an adverse inference instruction based on Appellees' failure to preserve the Window for inspection. Appellants' *Pro Se* Brief at 8-9. We begin with the observation that the body of Appellants' *Pro Se* Brief on this question includes only a single citation to authority. Appellants' *Pro Se* Brief at 61-69. An appellant must cite pertinent authority in support of each argument; failure to do so results in waiver. Pa.R.A.P. 2119(b). "Without a reasoned discussion of the law against which to adjudge the [appellant's] claims, our ability to provide appellate review is hampered. It is not this Court's function or duty to become an advocate for the appellant[]." **Estate of Haiko v. McGinley**, 799 A.2d 155, 161 (Pa. Super. 2002). Thus, an appealing party's failure to support an argument with a reasoned discussion of the law renders an issue unreviewable. **Id.** And though we will construe liberally a *pro se* litigant's filings, a *pro se* litigant must nonetheless adhere to all procedural rules. **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017).

On the issue of spoliation, Appellants cite only **Mt. Olivet Taber Church v. Edwin L. Wiegand Div.**, 781 A.2d 1263 (Pa. Super. 2001), *affirmed*

- 8 -

*without opinion*, 811 A.2d 565 (Pa. 2002), *cert. denied*, 539 U.S. 903 (2003), wherein this Court wrote:  "To fulfill the purposes of discovery sanctions [] – that is, to restore the accuracy of the trial, compensate innocent victims, and punish guilty spoliators – courts select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."  *Id.* at 1270 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78-79 (3d Cir. 1994)).  This citation explains the purpose of discovery sanctions, but Appellants fail to explain why a sanction for spoliation is appropriate in this case.

The duty to preserve evidence attaches where the party in possession of the evidence knows litigation is pending or likely.  *Marshall v. Brown's IA, LLC*, 213 A.3d 263, 268 (Pa. Super. 2019), *appeal denied*, 226 A.3d 568 (Pa. 2020).

> Where spoliation has occurred, the trial court must weigh three factors in assessing the proper penalty:  (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Id.*  "Spoliation may be negligent, reckless, or intentional; a party's bad faith, or lack of it, in the destruction of potentially relevant evidence goes to whether and what type of sanction should be imposed[.]"  *Id.* at 272.  Appellants' brief does not address any of these principles.  As we noted above, it is not this Court's role to construct a legal argument for an appealing party.  Because

Appellants have failed to support their spoliation argument with a reasoned discussion of applicable authority, they cannot obtain relief.

Appellants' fourth assertion of error is that the trial court erred in concluding that the doctrine of *res ipsa loquitor*[5] applies in this case. This section of Appellants' brief contains no citation to supporting authority. Appellants' *Pro Se* Brief, at 67-69. This results in waiver. **Estate of Haiko**, 799 A.2d at 161.

Appellants' fifth assertion of error is that the trial court erred in finding that PRM had no duty to inspect, maintain, or repair the Window. Appellants' *Pro Se* Brief, at 9. Appellants cite **Lopez v. Gukenback**, 137 A.2d 771 (Pa. 1958), wherein our Supreme Court articulated the following principles:

> On the question of the general liability of a landlord to his tenant for injuries received by the tenant on the premises certain legal propositions are well settled: (1) in the absence of any provision in the lease, a landlord is under no obligation to repair the leased premises, to see to it that they are fit for rental or to keep the premises in repair[;] (2) a tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenant knows or can ascertain by a reasonable inspection[;] (3) a landlord out of possession, however, may be liable (a) where he conceals a dangerous condition of which he has knowledge and of which the tenant has no knowledge or cannot be expected to discover and (b) where he knows or should know of a dangerous condition and leases the premises for a purpose involving a 'public use' and has reason to believe the tenant will not first correct the condition[;] (4) a landlord of a

_____

[5] The doctrine of *res ipsa loquitor* allows the jury to find negligence where, for example, the alleged event "is of a kind which ordinarily does not occur in the absence of negligence." **Quinby v. Plumsteadville Family Practice, Inc.**, 907 A.2d 1061, 1068 n.13 (Pa. 2006), quoting Restatement (Second) of Torts, § 328(D).

- 10 -

multiple-tenanted building, reserving control of the common approaches, such as sidewalks, passageways, etc., or parts of the building common to all tenants, such as the roof and walls, in bound to keep such approaches and parts reasonably safe for the use of tenants and their invitees and a landlord becomes liable where he either had actual notice of a defective condition therein or was chargeable with constructive notice, because had he exercised reasonable inspection he would have become aware of it.

*Id.* at 774-75 (citations omitted).

The landlord in *Lopez* rented an apartment to the tenants with a broken bedroom window: it had a one-inch hole in the center and a crack running the length of the window in either direction. *Id.* at 773. The landlord was aware of the window's condition, the plaintiff's asked for it to be repaired, and the landlord promised to repair it. *Id.* When one of the tenants attempted to open the window, it fell apart and caused injuries to her wrist and hand. *Id.*

The *Lopez* Court considered the following question: "Is a window located in a tenant's apartment an inherent and integral part of the wall of the building—a defect in which might affect other tenants and parts of the building—so that control and possession of the window are retained by the landlord rather than the tenant?" *Id.* at 775. The Court distinguished buildings whose walls are made in whole or in part of glass from ordinary windows.

The glass which fell upon the wife-appellant's hand came from a window and not from a modern glass wall or partition. The presence of this window in the building contributed nothing to, nor had it any functional use in connection with the other apartments or parts of the building; it was not part of, but simply an opening in the wall to serve and make livable this particular apartment.

- 11 -

*Id.* at 776. The ***Lopez*** Court distinguished the window at issue from a skylight, which in the previous case of ***Germansen v. Egan***, 196 A. 881 (Pa. Super. 1938), was held to be an integral part of the roof and thus within the control of the landlord:

> It is established, therefore, that the defendant-landlord used this roof, of which the skylight was a part, to collect and carry away the rain water falling on the rest of her building - the four story part - and was in possession, custody and control of it for the general benefit of her building … She alone had authority to repair or improve it. It follows that she was responsible for any damages naturally resulting from her negligent maintenance of the roof and skylight. The ***Germansen*** case is entirely inapposite.

*Id.* at 367 (quoting ***Germansen***, 196 A. at 882). Thus, the landlord in ***Lopez*** was not liable for the defective condition of the window in that case.

The Window involved instantly was a storm window on the unit of one of Appellees' tenants. It was not part of a common area, such as a roof, that was within Appellees' exclusive control and whose maintenance benefitted all of the buildings' tenants. And the fact that Appellees responded on several occasions to Appellants' complaints of water intrusion through the storm windows of Appellants' units does not establish, under ***Lopez***, that Appellees were responsible to inspect and repair the Window in question for the benefit of Appellants. The principles articulated in ***Lopez*** dictate a different result. Moreover, there is no evidence here, as there was in ***Lopez***, to indicate that Appellees were aware of any problem with the Window. Appellants' fifth argument fails.

With their sixth argument, Appellants assert that the trial court erred in refusing to consider evidence in support of Appellants' promissory estoppel claim. This argument is premised on pre-trial settlement negotiations. Appellants cite **Crouse v. Cyclops Indus.**, 745 A.2d 606 (Pa. 2000), for the proposition that the doctrine of promissory estoppel enforces promises that a promisee has relied upon to his or her own detriment. Appellants' *Pro Se* Brief at 74. As the **Crouse** Court explained,

> Where there is no enforceable agreement between the parties because the agreement is not supported by consideration, the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment.

*Id.* at 402. Appellants fail to identity any promise made during settlement negotiations that they relied upon to their own detriment. Thus, they have failed to develop any basis upon which we can grant relief.

Appellants' seventh argument is that the trial court erred in rejecting their enterprise liability argument where the same person was either the sole owner or majority owner of PRM, Property, and Northampton. Appellants' *Pro Se* Brief at 9-10. Appellants do not develop an argument on this point anywhere in the body of their brief. As a result, this argument is waived.

The seventh argument in the body of Appellants' Brief is that the trial court erred in failing to review the record in a light most favorable to Appellants. Appellants' *Pro Se* Brief, at 75-76. This argument is waived because it is omitted from Appellants' statement of questions presented

- 13 -

(Pa.R.A.P. 2116), because it is unsupported by pertinent authority (Pa.R.A.P. 2119(b)), and because it is a reassertion of matters, related to the joinder of Sabella and Appellees' duties with respect to the Window, which we have already considered and rejected elsewhere in this memorandum.

For their eighth and final argument, Appellants claim the trial court erred in permitting an attorney, who was not counsel of record in the instant matter, to sit at the defendants' table during argument of the summary judgment motion. Appellants' *Pro Se* Brief at 10. Appellants assert the attorney in question, Matthew Deschler, was representing Northampton in other litigation (not the Related Action) pending between Northampton and Appellants. Appellants' *Pro Se* Brief at 77-78. Apparently the trial court was set to hear argument on that case after the arguments on this action and the Related Action. Appellants claim the trial court's decision to permit Deschler to sit at the counsel table during argument of the instant matter was done to intimidate Appellants, and that it created an appearance of partiality on the part of the trial court. Appellants' claim Deschler's presence at counsel table was a violation of Pennsylvania Rule of Civil Procedure 1012(a), which governs an attorney's entry of appearance. Pa.R.C.P. 1012(a).

While it is true that Deschler did not enter an appearance in the instant matter, there is no indication that Deschler argued on behalf of Appellees, and Appellants fail to explain how his presence at the counsel table during oral argument of the summary judgment motion prejudiced them. Appellants offer

nothing to substantiate their claim that Deschler's presence was permitted in order to intimidate them, or that the trial court was partial to Appellees. Appellants' final argument does not establish any grounds for appellate relief.

In summary, we have concluded that each of Appellants' arguments is waived or lacking in merit.  We therefore affirm the order entering summary judgment in favor of Appellees.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/6/2026